IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JONE MARIE DIXON                                                          PLAINTIFF

V.                                             CIVIL ACTION NO. 1:19-CV-167-SA-DAS

ALCORN COUNTY, MISSISSIPPI and
JIMMY MCGEE                                                    DEFENDANTS

ORDER AND MEMORANDUM OPINION

On September 12, 2019, Jone Dixon, the Plaintiff in this matter, filed her Complaint [1] against Alcorn County and Jimmy McGee, alleging that she was terminated from her employment with Alcorn County in violation of her First Amendment rights and the Age Discrimination in Employment Act ("ADEA"). Dixon also alleges that the Defendants retaliated against her in violation of Title VII of the Civil Rights Act of 1964. In addition to her federal claims, Dixon claims that the Defendants maliciously interfered with her employment in violation of Mississippi state law. Presently before the Court is McGee's Motion for Judgment on the Pleadings [13], wherein he asserts that the federal claims against him should be dismissed because he is entitled to qualified immunity. The issues are fully briefed and ripe for review.

*Factual and Procedural History*

Jone Dixon worked for the Justice Court of Alcorn County, Mississippi for eighteen years. She served as Court Clerk for the final eight of those years. As a Court Clerk, Dixon was responsible for the maintenance of court records and additional clerical duties. The Plaintiff worked closely with Justice Court Judge Jimmy McGee. According to Dixon, throughout her tenure, McGee made several comments favoring younger clerks over the older clerks. She claims that being young was a prerequisite to pleasing McGee.

Dixon later complained to the Chancery Clerk about McGee's alleged failure to perform his judicial duties efficiently. She claims that McGee crowded the court's docket by failing to timely dispose of his cases. Dixon alleges in her Complaint [1] that while cases would linger on the docket, McGee ignored them for months and even years. Dixon recalls that McGee failed to appear for many court hearings and on one occasion, McGee issued a ruling without a trial.[1] The Chancery Clerk allegedly relayed Dixon's complaint to the Board of Supervisors and a member of the Board relayed the complaint back to McGee, purportedly causing McGee to have ill-will towards Dixon.

At a time unknown by the Court and the parties, two litigants who were dissatisfied with McGee's failure to dispose of their case filed a complaint with the Mississippi Commission on Judicial Performance ("the Commission"). The Commission initiated an investigation and asked Dixon to participate. Dixon obliged and answered the Commission's questions about McGee's conduct as a Justice Court Judge. Upon request, Dixon provided the Commission with a list of cases that were delayed due to McGee's alleged misconduct.[2] Thereafter, McGee incorrectly assumed that Dixon made the initial complaint to the Commission. McGee called Dixon to inform her that he knew she reported him to the Commission and that she was "going to be sorry" for doing so.

That threat, according to Dixon, became a reality. Dixon alleges that McGee met individually with the Board of Supervisors before their official meeting on May 7, 2018 to persuade the Board to terminate Dixon as the Court Clerk. After the board meeting, Dixon was fired and replaced by Donna Taylor, a younger employee of the Clerk's office.

---

[1] Although courts often dispose of legal disputes without a trial, the Court assumes the Plaintiff believes McGee inappropriately disposed of cases inconsistent with standard procedural practices.

[2] The investigation resulted in a public reprimand and the imposition of a fine by the Mississippi Supreme Court. *See Mississippi Comm'n on Judicial Performance v. McGee*, 266 So.3d 1003 (Miss. 2019).

The Plaintiff filed a Charge of Discrimination with the EEOC on July 30, 2018, citing age discrimination as the basis for her charge. She later filed her Complaint [1] on September 12, 2019 against Alcorn County, Mississippi and Jimmy McGee, in his individual capacity. The Plaintiff alleges in her Complaint [1] that the Defendants violated her First Amendment rights when they terminated her for exercising her free speech guaranteed by the Constitution. In addition, she alleges that the Defendants unlawfully retaliated against her after she filed her EEOC Charge of Discrimination. The Plaintiff further alleges discrimination on the basis of age in violation of the ADEA and malicious interference with employment under Mississippi state law.

On July 30, 2020, the Plaintiff filed an Amended Complaint [28]. In her Amended Complaint [28], the Plaintiff asserts her ADEA and Title VII retaliation claims against only the Municipal Defendant, apparently abandoning those claims as to McGee. The Amended Complaint [28] asserts only First Amendment and malicious interference with employment claims against McGee.

Presently before the Court is McGee's Motion for Judgment on the Pleadings [13] based on qualified immunity. The Defendant argues that because he is entitled to immunity, the Plaintiff's First Amendment claim against him fails as a matter of law and must be dismissed. Having considered the facts and argument in this case, the Court is prepared to rule.

*Legal Standard*

The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citations omitted). To survive a motion for a judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.

Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This involves a two-step inquiry. First, the court must identify the complaint's well-pleaded factual content. In doing so, the court must set aside "any unsupported legal conclusions," the truth of which the court cannot assume. *See Doe v. Robertson*, 751 F.3d 383, 388 (5th Cir. 2014). Second, the court must ask whether the remaining allegations "are sufficient to nudge the [plaintiff's] claim across the 'plausibility' threshold." *Id* at 390 (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). Stated differently, the Court should consider whether it can reasonably infer from the complaint's well-pleaded factual content "more than a mere possibility of misconduct." *See Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

*Discussion*

At the outset, two issues raised by the Defendants are moot in light of the Plaintiff's Amended Complaint [28]. In her Amended Complaint [28], the Plaintiff asserts only a First Amendment claim and a malicious interference with employment claim against McGee. Therefore, the Plaintiff's ADEA and Title VII retaliation claims against McGee, which were included only in the Plaintiff's original Complaint [1] but not her Amended Complaint [28], are dismissed as moot.

As to the First Amendment claim, the Defendant argues that he is entitled to qualified immunity. "Qualified immunity is a judicially created affirmative defense which protects state or local officials sued in their individual capacity . . . ." 59 Am. Jur. Proof of Facts 3d 291 (2019).

> [It] balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government officials' error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

4

*Groh v. Ramirez*, 540 U.S. 551, 567, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004) (KENNEDY, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978) for the proposition that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law"). Qualified immunity is "an immunity from suit rather than a mere defense to liability. . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

Once qualified immunity is asserted as an affirmative defense, "the plaintiff has the burden to negate the assertion of qualified immunity." *Collier v. Montgomery*, 569 F.3d 359, 370 (5th Cir. 2009). In order to resolve a qualified immunity dispute, courts employ two factors: First, whether the plaintiff "has adduced sufficient evidence . . . suggesting [the defendants'] conduct violated an actual constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Second, the Court must "consider whether [the defendants'] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id*. The Court has discretion to address either step first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

The Plaintiff claims McGee violated her First Amendment right to free speech when he recommended that she be terminated after she complained about McGee's failure to properly perform his duties as a Justice Court Judge. Whether the Plaintiff can overcome a qualified immunity defense depends on her ability to establish a First Amendment violation in light of clearly established law. *See id*. The Supreme Court has identified two inquiries to guide courts' interpretation of the constitutional protections afforded to speech by a public employee. "The first requires determining whether the employee spoke as a citizen on a matter of public concern." *Pickering v. Board of Ed. of Tp. High School Dist. 205, Will County, Illinois*, 391 U.S. 563, 568,

5

88 S.Ct. 1731, 20 L. Ed. 2d 811 (1968). "If the answer is no, the employee has no First Amendment cause of action based on her employer's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S.Ct. 1951, 1958, 164 L. Ed. 2d 689 (2006) (citation omitted). "If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *See Pickering*, 391 U.S. at 568.

These two inquiries were distilled into four factors by the Fifth Circuit in *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377 (5th Cir. 1999). There, the Fifth Circuit wrote:

> there are four elements to an employee's First Amendment retaliation claim against his *employer*: First, the Plaintiff must suffer an adverse employment decision. *See Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997). Second, [the Plaintiff must speak as a private citizen] on a matter of public concern. *See Thompson v. City of Starkville*, 901 F.2d 456, 460 (5th Cir. 1990) (citing *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L. Ed. 2d 708 (1983)). Third, the Plaintiff's interest in commenting on matters of public concern must outweigh the Defendants' interest in promoting efficiency. *Id.* (citing *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L. Ed. 2d 811 (1968)). Fourth, the Plaintiff's speech must have motivated the Defendants' action. *Id.* (citing *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L. Ed. 2d 471 (1977)).

*See Teague*, 179 F.3d at 380.

The Court considers first whether the Plaintiff was subjected to an adverse employment action. Because the Plaintiff was terminated by the Board of Supervisors, she was certainly subjected to an adverse employment action. The Court's analysis does not stop here, though. Because McGee is not the Plaintiff's employer and is a non-final decisionmaker, the Plaintiff must "establish an affirmative causal link between [McGee's] action and any injury [Dixon] sustained."

6

*Jett v. Dallas Independent School Dist.*, 798 F.2d 748, 758 (5th Cir. 1986).[3] Individual liability, in this context, turns on traditional tort principles of whether the particular act was a causal link, or a proximate cause, in the termination. *See Sims v. City of Madisonville*, 894 F.3d 632, 641 (5th Cir. 2018). In other words, the question becomes whether the defendant "set in motion" the termination. *See id.* (additional citation omitted). Here, the Plaintiff claims that prior to her termination, McGee met with the Board of Supervisors to allegedly provide his recommendation that she be fired.[4] Dixon claims that after this meeting, she was terminated for engaging in her right to speak freely under the Constitution. Accepting these facts as true, the Court finds that the Plaintiff has alleged sufficient facts to support her claim that McGee's actions were a proximate cause of the adverse employment action.

Second, the Court looks to whether the Plaintiff spoke as a citizen on a matter of public concern. "An employee is not speaking as a [private] citizen—but rather in [her] role as an employee—when [she] 'make[s] statements pursuant to [her] official duties.'" *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 421, 126 S.Ct. 1951) (alterations in original).[5] An employee's official duties are not necessarily defined by a job

---

[3] Whether a non-decision maker can be held liable for First Amendment retaliation has been an ongoing debate amongst federal courts in the United States. The Fifth Circuit ended the debate in this Circuit in 2018 in *Sims v. City of Madisonville* when it held that *Jett* is controlling. *See Sims*, 894 F.3d 632 (5th Cir. 2018). As addressed above, the *Jett* court held that in order for a non-decision maker to be held liable for First Amendment retaliation in employment, the plaintiff must establish that the non-decision maker is the proximate cause of the injury sustained. *See Jett*, 798 F.2d at 758.

[4] The Court has no evidence of the conversations between McGee and the Board but accepts the Plaintiff's claim as true for the purposes of its analysis at this stage of the proceedings.

[5] "When a citizen enters government service, the citizen by necessity must accept certain limitations on [her] freedom." *Garcetti*, 547 U.S., at 418, 126 S.Ct. 1951. This is true because "government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public service." *Id.* "At the same time, the Court has recognized that a citizen who works for the government is nonetheless a citizen" and does not forfeit all of their constitutional liberties. *Id.* "The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Id; see Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L. Ed. 2d 570 (1972). "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id; See, e.g., Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L. Ed. 2d 708 (1983).

description and are not limited to the subject matter of one's employment. *Garcetti*, 547 U.S. at 421–422, 126 S.Ct. 1951. "Activities undertaken in the course of performing one's job are activities pursuant to official duties," even if the employee is not required to undertake the activity. *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007). Thus, speech that "focuses on ... [an employee's] daily operations" is not protected by the First Amendment. *Id*. at 694. However, in instances where the speech is not required by the plaintiff's job duties, the Fifth Circuit has provided that "activities undertaken in the course of performing one's job are activities pursuant to official duties." *Id*.

While Dixon exercised her speech during work hours, the Court cannot summarily conclude at this stage of the proceedings that the speech was part of her official duties as a Justice Court Clerk. As the Plaintiff aptly acknowledged, filing complaints against the Judge is not a part of her official duties. In addition, there is no indication that she made these complaints under her official title of Justice Court Clerk. In fact, because her comments bore similarities to complaints made by numerous citizens, it is at least plausible that she spoke as a private citizen and not a public employee. *See Garcetti*, 547 U.S. at 422, 126 S.Ct. 1951. While these comments, in some way, may have some relation to her day-to-day operations as the Court Clerk, the Court finds that Dixon has pled sufficient facts to survive dismissal as to this issue.

In addition to speaking as a private citizen, Dixon must also speak on a matter of public concern. The Plaintiff complained that McGee intentionally failed to timely dispose of many cases, failed to appear for court hearings, and on one occasion issued a ruling without a trial. Consequently, cases lingered on the docket for months and sometimes years. Thus, at the root of her comments and complaints is judicial efficiency. Pivotal here is the fact that other private citizens made similar complaints about McGee, including the comments made to the Commission

on Judicial Performance which ultimately led to a public reprimand and fine by the Mississippi Supreme Court. The Fifth Circuit held in *Brawner v. City of Richardson, Texas*, that the disclosure of misbehavior by public officials is a matter of public concern and deserves constitutional protection. *See Brawner*, 855 F.2d 187, 193 (5th Cir. 1988). Because Dixon complained about what she believed was misconduct, this element of her claim is satisfied.

Third, Dixon must demonstrate that her interest in "commenting upon matters of public concern" is greater than the defendant's interest in "promoting the efficiency of the public services [they] perform." *See Pickering*, 391 U.S. at 568. "This involves whether the speech: (1) was likely to generate controversy and disruption, (2) impeded the department's general performance and operation, and (3) affected working relationships necessary to the department's proper functioning." *Brawner*, 855 F.2d at 192. McGee's interest here is not clear. Based on the alleged conduct, the efficiency of public services is far from McGee's concern considering his failure to dispose of cases in a timely manner. Dixon's interest, however, is revealed in her request that the Board appoint a temporary judge to help with the backlog of cases. There is no evidence to suggest Dixon's comments either generated controversy, impeded the court's general performance, or affected working relationships necessary to the functionality of the office. At most, her comments offended McGee. If the superior interest contemplated by Fifth Circuit jurisprudence is the efficiency of public services, Dixon can certainly survive dismissal on this point.

Finally, the Plaintiff's speech must have been motivated by the Defendant's actions. Here, McGee is at the center of both complaints made by Dixon. She complained to the Chancery Clerk that McGee failed to properly perform his duties as a Justice Court Judge. Dixon made the same complaint in a statement she provided to the Commission on Judicial Performance. According to the pleadings, McGee was not pleased with the comments made about his work as a Judge. Dixon

9

pleads that McGee threatened her after learning he was being investigated by the Commission on Judicial Performance. The Court finds that the Plaintiff has satisfied her burden on this issue.

For these reasons, the Court finds that Dixon has pled sufficient facts to survive dismissal as to whether a violation of her First Amendment rights occurred.

The second prong of the qualified immunity analysis is whether the Defendant's actions were objectively unreasonable in light of clearly established law. This question is a doozy. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). The Section 1983 plaintiff bears the burden of proof. *See Vann v. City of Southaven, Mississippi*, 884 F.3d 307, 309 (5th Cir. 2018). And the burden is heavy: A right is clearly established only if relevant precedent "ha[s] placed the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L. Ed. 2d 1149 (2011). While the Court must "frame the constitutional question with specificity and granularity" the Supreme Court has warned lower courts "not to define clearly established law at [that] high level of generality." *Id.* at 742. "The dispositive question is whether the violative nature of particular conduct is clearly established." *Mullenix v. Luna*, 136 S.Ct. 305, 308, 193 L. Ed. 2d 255 (2015).

With this in mind, the appropriate question is whether McGee was put on notice—albeit constructive—by legal precedent that encouraging the termination of a public employee for exercising free speech is a violation of the law. As illustrated by the abundance of case law cited in the Court's above analysis, it is well-settled that the termination of a public employee speaking as a private citizen on a matter of public concern is a violation of the First Amendment. Moreover, the Fifth Circuit has made a more affirmative declaration that relates directly to the facts of this case—"the disclosure of misbehavior by public officials . . . deserves constitutional protections." *See Brawner*, 855 F.2d at 193. The Plaintiff alleges that McGee encouraged her termination after

10

she disclosed misconduct on his part. In addition, she alleges that before speaking with the Board of Supervisors, McGee threatened that "she [Dixon] was going to be sorry for having reported him to the Commission on Judicial Performance." The Court finds that in light of clearly established law, the Plaintiff pled sufficient facts to show that McGee's actions were objectively unreasonable.

*Conclusion*

Having decided that the Plaintiff pled sufficient facts to establish a constitutional violation of clearly established law, the Court finds that McGee is not entitled to qualified immunity. Therefore, for all the reasons discussed above, the Defendant's Motion for Judgment on the Pleadings [13] is DENIED. The Plaintiff's ADEA and Title VII Retaliation claims are dismissed as moot in light of the Plaintiff's Amended Complaint [28].

SO ORDERED this, the 28th day of September, 2020.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE